CITY OF BOSTON *vs.* COMMONWEALTH.

Suffolk. October 9, 1947. — December 11, 1947.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Old Age Assistance. Public Welfare. Statute,* Retroactive statute.

The obligation of the Commonwealth under § 3 of G. L. (Ter. Ed.) c. 118A, as appearing in St. 1932, c. 259, § 3, to reimburse a city "for one third of the amount of" old age assistance disbursed by it under that chapter was not lessened by the city's also receiving Federal funds toward such disbursement.

In G. L. (Ter. Ed.) c. 118A as appearing in St. 1936, c. 436, § 1, the provisions of § 8, which did not become effective until September 1, 1936, were not retroactive.

An amount paid to a city under the provision of G. L. (Ter. Ed.) c. 138, § 27, as appearing in St. 1936, c. 438, requiring the sum of $2,000,000 to "be used further to reimburse cities and towns forthwith" for old age assistance, was not to be applied toward payment of a sum already due the city from the Commonwealth under G. L. (Ter. Ed.) c. 118A, § 3, as appearing in St. 1932, c. 259, § 3.

PETITION, filed in the Superior Court on February 2, 1942.

The case was heard by *Pinanski*, J.

In this court the case was submitted on briefs.

*J. L. Vallely*, Assistant Corporation Counsel, & *W. H. Kerr*, for the petitioner.

*C. A. Barnes*, Attorney General, & *B. H. Mullaney*, Assistant Attorney General, for the Commonwealth.

RONAN, J. The city of Boston expended in old age assistance in accordance with G. L. (Ter. Ed.) c. 118A during the period from February 1, 1936, to and including August 31, 1936, the sum of $871,611.23, and received through the Commonwealth in Federal funds on account of such expenditure the sum of $412,788.26, and the sum of $152,941 from the Commonwealth. It brings this petition to recover $125,825.01 which it alleges is the balance due from the Commonwealth. The latter contends that it was only obligated to pay one third of the balance remaining after the deduction of the amount of the Federal funds received by the city, and that it has paid this balance. If this contention is unsound, then it contends that the city in October, 1936, was paid by the Commonwealth by virtue of G. L. (Ter. Ed.) c. 138, § 27, as appearing in St. 1936, c. 438, the sum of $440,322.02, and consequently that the city has been paid a sum in excess of the amount of its present claim and that it now owes the city nothing on this claim. The parties submitted the case to the Superior Court upon a statement of agreed facts, and the judge after making a decision for the respondent reported the case to this court with a stipulation that if the decision was wrong a decision in favor of the petitioner was to be entered in the sum of $125,825.01, with interest from the date of the filing of the petition.

The first question presented is whether the city is entitled to recover one third of the total amount expended by it during this seven months period in 1936 or only one third of the sum remaining after deducting from such total amount the amount of Federal funds paid to it by reason of having furnished old age assistance.

A special branch of relief providing for adequate assist-

ance to certain aged citizens was established by St. 1930, c. 402, § 1, which became effective July 1, 1931. This section was inserted in the General Laws as c. 118A. Section 3 of said c. 118A provided that "In respect to all aged persons in receipt of assistance under this chapter, the town rendering the assistance shall, after and subject to approval of the bills by the department and subject otherwise to the provisions of section forty-two of chapter one hundred and twenty-one, be reimbursed by the commonwealth for one third of the amount of assistance given, or, if the person so aided has no settlement in the commonwealth, for the total amount thereof. If the person so aided has a legal settlement in another town, two thirds of the amount of such assistance given may be recovered in contract against the town liable therefor in accordance with chapter one hundred and seventeen." A temporary measure for financing old age assistance was provided by St. 1931, c. 398, which by § 1 imposed a tax on all male inhabitants over twenty years of age for the years 1931 and 1932, and by § 8 provided for the reimbursement of cities and towns for the total amount of assistance given by them. Statute 1932, c. 259, §§ 1 and 2, provided for the extension of the special tax on male inhabitants to 1933 and for the distribution to the cities and towns of the estimated receipts of this tax amounting to $2,400,000 in a certain manner. The first sentence of c. 118A, § 3, as appearing in said c. 259, § 3, reads: "In respect to all aged persons in receipt of assistance under this chapter, the town rendering the assistance shall be reimbursed by the commonwealth for one third of the amount of assistance given, or, if the person so aided has no settlement in the commonwealth, for the total amount thereof." This was the statute in effect when the aid in question was furnished by the city. It required the Commonwealth to reimburse the city for one third of the amount of assistance given. That section measured the liability of the Commonwealth. It contained no provision for deduction, if the city was the recipient of Federal funds. The interpretation of a similar statute was settled by *Boston* v. *Commonwealth,* decided this day, and we need not again traverse that ground. The

Commonwealth is not entitled to have the amount paid by Federal grants deducted before its contribution is computed.

The Commonwealth having failed to pay the city one third of the amount expended by the city for old age assistance from February 1 to and including August 31, 1936, we inquire whether the Commonwealth is entitled to set off against the balance due for aid during this particular period the sum of $440,322.02 paid to the city in October, 1936, in accordance with G. L. (Ter. Ed.) c. 138, § 27, as appearing in St. 1936, c. 438.

Upon the adoption of the Twenty-first Amendment to the Constitution of the United States on December 5, 1933, St. 1933, c. 376, was enacted regulating the sale of intoxicating liquor, and § 2 of this chapter struck out G. L. (Ter. Ed.) c. 138 and substituted therefor a new c. 138. A provision was made, c. 138, § 27, for the use of a part of the receipts from licenses and permits for the purpose of maintaining old age assistance.

General Laws (Ter. Ed.) c. 118A was superseded by a new c. 118A appearing in St. 1936, c. 436, § 1. Section 7 of the new c. 118A provided that Federal funds should be paid to the several towns as allotted by the department of public welfare, and § 8 provided that the town rendering assistance should be reimbursed for two thirds of the remainder of such disbursements or for all of such remainder if the person so assisted had no settlement in the Commonwealth. If the person so assisted had a settlement in another town, then one third of such remainder could be recovered by the town furnishing the aid from the town in which the person had a settlement. Section 7 became effective upon the passage of c. 436 on June 30, 1936, but § 8 did not become effective until September 1, 1936, the day after the end of the period in which the city had furnished the instant aid. See St. 1936, c. 436, § 4. Statute 1936, c. 436, § 3, amended G. L. (Ter. Ed.) c. 138, § 27, and provided that a portion of certain receipts from licenses and permits granted by the alcoholic beverages control commission and of the excise taxes imposed under G. L. (Ter. Ed.) c. 138, § 21, were to be applied for the reimbursement of cities and towns in

furnishing assistance in the manner provided by § 8 of the new c. 118A and any balance then remaining was to be paid to such cities and towns in a certain proportion. Section 27 of G. L. (Ter. Ed.) c. 138 was again revised on July 2, 1936, by St. 1936, c. 438, which provided that a portion of the receipts from certain liquor licenses and permits and the liquor excise taxes "shall be used, so far as necessary, for reimbursing cities and towns for such assistance given by them, in the manner provided by section eight of said chapter [118A] and any balance, including surplus, at the end of each fiscal year, shall then be forthwith transferred into the general fund or ordinary revenue of the commonwealth; provided, that, of the balance remaining on June thirtieth, nineteen hundred and thirty-six, three million two hundred thousand dollars shall forthwith be transferred into the general fund or ordinary revenue of the commonwealth and two million dollars shall be used further to reimburse cities and towns forthwith for such assistance in the same respective proportions as reimbursement by the commonwealth under said section eight." It is to be noted that § 8 of the new c. 118A changed the rate at which the Commonwealth was to contribute to old age assistance, but there is nothing to indicate that the Legislature intended that this section should be retroactively applied. *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1. *New England Trust Co.* v. *Paine,* 317 Mass. 542. It is also to be noted that c. 438 of St. 1936 became effective September 30, 1936, and the command of that chapter was that the distribution of the $2,000,000 should be made forthwith and therefore before a town or city in the usual course of events could be expected to file an account for allowances for aid furnished since September 1, 1936, when the new rate at which the Commonwealth was to contribute became effective. The rate at which it should have contributed for the aid in question was fixed by the statute in effect at the time the aid was rendered by the city, but the Commonwealth never paid its prescribed share for that particular aid. According to the agreed facts the Commonwealth on June 30, 1936, had a surplus of over $6,000,000 in the old age assistance fund so

called. See now G. L. (Ter. Ed.) c. 118A, § 11, as inserted by St. 1941, c. 729, § 10, and as amended by St. 1945, c. 684. The aim of the Legislature in enacting c. 438 of St. 1936 was that, after the Commonwealth had satisfied the claims of the cities and towns for reimbursement on account of aid rendered, the additional sum of $2,000,000 should be distributed among them. This was in the nature of a windfall. It was not intended as payment by the Commonwealth of any obligation owed by it to the cities and towns. It was not distributed on account of the particular assistance rendered by a city or town during any particular period. It was not granted on any condition that it was to be used for such assistance. It was general revenue which the municipalities could use for any municipal purpose. The Commonwealth was not entitled to have any part of the distribution credited to any obligation previously owed the city for assistance. To permit this to be done would thwart the legislative intent that the Commonwealth should pay what it owed and in addition should distribute the $2,000,000 to the cities and towns to recompense them to some extent for the expenses they had theretofore incurred in maintaining this form of relief.

Decision should be entered in favor of the petitioner in accordance with the stipulation.

*So ordered.*